IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY BOYCE,

    Plaintiff,                          No. CIV S-00-0176 MCE PAN P

    vs.

G.A. MUELLER, et al.,

    Defendants.                  FINDINGS & RECOMMENDATIONS

        Plaintiff is a prisoner without counsel who claims defendants violated his right not to be subjected to cruel and unusual punishment by subjecting him to hazardous conditions at Folsom State Prison during a seismic retrofit project. Defendants move for summary judgment. Plaintiff opposes.[1]

STANDARD ON SUMMARY JUDGMENT

        A party may move, without or without supporting affidavits, for a summary judgment and the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a)-(c).

---

[1] On April 21, 2000, the court served on plaintiff notice required by <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A fact is "material" if it affects the right to recover under applicable substantive law. Id. The moving party must submit evidence that establishes the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" that the moving party believes demonstrate the absence of a genuine issue of material fact. Id., at 323. If the movant does not bear the burden of proof on an issue, the movant need only point to the absence of evidence to support the opponent's burden. To avoid summary judgment on an issue upon which the opponent bears the burden of proof, the opponent must "go beyond the pleadings and by her own affidavits, or by the '"depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id., at 324. The opponent's affirmative evidence must be sufficiently probative that a jury reasonably could decide the issue in favor of the opponent. Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corporation, 475 U.S. 574, 588 (1986). When the conduct alleged is implausible, stronger evidence than otherwise required must be presented to defeat summary judgment. Id., at 587.

Fed. R. Civ. P. 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Nevertheless, the Supreme Court has held that the opponent need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Celotex, 477 U.S. at 324. Rather, the questions are (1) whether the evidence could be submitted in admissible form and (2) "if reduced to admissible evidence" would it be sufficient to carry the party's burden at trial. Id.,

1 at 327.  Thus, in <u>Fraser v. Goodale</u>, 342 F.3d 1032 (9th Cir. 2003), objection to the opposing
2 party's reliance upon her diary upon the ground it was hearsay was overruled because the party
3 could testify to all the relevant portions from personal knowledge or read it into evidence as
4 recorded recollection.

5    A verified complaint based on personal knowledge setting forth specific facts
6 admissible in evidence is treated as an affidavit.  <u>Schroeder v. McDonald</u>, 55 F.3d 454 (9th Cir.
7 1995); <u>McElyea v. Babbitt</u>, 833 F.2d 196 (9th Cir. 1987).  A verified motion based on personal
8 knowledge in opposition to a summary judgment motion setting forth facts that would be
9 admissible in evidence also functions as an affidavit.  <u>Johnson v. Meltzer</u>, 134 F.,3d 1393 (9th
10 Cir. 1998); <u>Jones v. Blanas</u>, 393 F.3d 918 (9th Cir. 2004).

11    Defects in opposing affidavits may be waived if no motion to strike or other
12 objection is made.  <u>Scharf v. United States Attorney General,</u> 597 F.2d 1240 (9th Cir. 1979)
13 (incompetent medical evidence).

14 <center>UNDISPUTED FACTS</center>

15    The following facts are undisputed:  From October 13, 1999, through December
16 27, 2000, plaintiff was housed at Folsom State Prison in Building 1.  Building 1 underwent an
17 earthquake retrofit from February 2, 1998, through December 27, 2000.  Indoor retrofit work
18 began April 14, 1999, and work was performed weekdays between 8:00 a.m. and 4:00 p.m.,
19 except holidays.  Work stopped when prisoners moved between their cells and the yard.

20    Acuna managed daily operations in Building 1 beginning in April 2000 after
21 major construction work was complete.  Throughout 1999 and 2000, Vickery was the lieutenant
22 in charge of "programming" and disciplinary matters and Jackson was Associate Warden.  In
23 1999 and 2000, Andrade worked one day a week performing security checks and cell searches.
24 Novikoff and Ramirez were correctional officers in Building 1 in 1999 and 2000.  Beginning in
25 June 1999, Brown oversaw security and custody needs related to the retrofit.
26 /////

1          August 13, 1999, workers began drilling inside Building 1 and so Brown issued a
2  memorandum notifying staff and prisoners that earplugs and dust masks were available upon
3  request.
4          All known or suspected asbestos had been removed in 1992.  Nevertheless,
5  demolition areas were contained and prison officials requested an outside firm conduct asbestos
6  sampling.  Around May 29, 1999, no asbestos was detected in the plaster under lead-based paint.
7  Two asbestos samples were taken November 9, 1999, when workers broke up concrete.  One
8  sample showed levels far below federal limits and the other could not be read.
9  General demolition was delayed until after workers removed lead paint.  Areas from which it was
10 removed were contained and so apart from initially elevated levels caused by faulty ventilation,
11 sampling results were below federal limits.
12         When general demolition began, prison officials ordered sampling for nuisance
13 dust, respirable dust and crystalline silica dust and the results were below OSHA's permissible
14 limits.  Staff and prisoner concerns about air quality prompted prison officials to request an
15 OSHA site evaluation.  The agency issued no citation after a November 10, 1999, evaluation.
16         In late August 2000, the dining hall in Building 1 was reconstructed.  Fans were
17 used to direct fumes away from prisoner housing areas.  August 31, 2000, plaintiff complained of
18 dizziness, burning eyes, headache, coughing and sneezing.  In response, defendant Manuel
19 consulted with hazardous materials experts and learned epoxy paint applied on the floor
20 contained volatile hydrocarbons that would have evaporated within a few hours of application
21 and concluded it was unlikely prisoners would have suffered adverse health effects because of
22 their distance from the work, especially since the workers, who wore no protective gear, did not
23 complain of adverse physical symptoms.  Gentry reviewed the appeal on the second formal level
24 and Jackson reviewed it on the Director's level of review and each affirmed defendant Manuel's
25 decision.
26 /////

1         Defendants are unaware of any prisoner being exposed to excessive levels of
2 carbon monoxide.

3         Prisoners had access to the exercise yard according to a schedule posted on
4 bulletin boards and announced over the public address system.  Ordinarily, prisoners were
5 allowed on the yard from 8:00 a.m. until 3:00 p.m., but sometimes they were released as early as
6 6:30 a.m.  Plaintiff's access was limited because of his custody status.  During times of
7 particularly disruptive construction, defendant Brown ordered mandatory yard time for all
8 prisoners.

9         Maintenance staff set traps for pests and checked them weekly.  Whenever Brown
10 received notice vermin were a problem he immediately notified pest-control staff.  Building 1
11 was cleaned daily and each prisoner had cleaning supplies and regular laundry service.

12         Medical personnel were available daily.

13         Major construction was complete by April 2000 and so defendant Acuna ordered
14 prisoners to discontinue the practice of hanging "screens," i.e., cardboard, plastic sheeting and
15 the like, on their cell doors and around their bunks.  Since prisoners still were concerned about
16 dust and noise, April 27, 2000, defendant Brown again made earplugs and masks available upon
17 request.

18 <div align="center">ANALYSIS</div>

19         Plaintiff claims defendants were deliberately indifferent to his exposure to
20 intolerable levels of harmful airborne particles including asbestos, lead paint dust and crystalline
21 silica.  He asserts he was unaware of the yard schedule and so was in his cell all day every day
22 and he did not have access to a mask until after he submitted a grievance on September 8, 2000.

23         Conditions of confinement violate the Eighth Amendment when prison officials
24 are deliberately indifferent to a condition causing unnecessary and wanton infliction of pain,
25 meaning the condition is completely without penological justification. Rhodes v. Chapman, 452
26 U.S. 337, 346-47 (1981); Wilson v. Seiter, 501 U.S. 294, 302-03 (1991).  A prison official is

1  deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one
2  that today's society chooses to tolerate." See Helling v. McKinney, 509 U.S. 25, 35 (1993);
3  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The official must "be aware of the facts from
4  which the inference could be drawn that a substantial risk of serious harm exists, and he must
5  also draw the inference." Farmer, 511 U.S. at 837.
6         It is undisputed all known or suspected asbestos was removed in 1992 but areas of
7  demolition were contained and the results of asbestos sampling were negative. Although lead
8  paint was present, general demolition was delayed until after it was removed.  Areas with lead
9  paint were contained and so apart from initially elevated levels caused by faulty ventilation,
10 sampling results were below federal limits.
11        It also is undisputed that prison officials ordered environmental sampling for
12 nuisance dust, respirable dust and crystalline silica dust and the results were below the
13 permissible limits set by Occupational Safety and Health Administration (OSHA).  Staff and
14 prisoner concerns about air quality prompted prison officials to request an OSHA site evaluation.
15 The agency issued no citation after a November 10, 1999, evaluation.
16        Plaintiff adduces no evidence defendants knew of facts from which they could
17 infer plaintiff was at risk of exposure to dangerous levels of airborne substances.
18        No reasonable jury could find in plaintiff's favor on this issue and so defendants
19 are entitled to judgment as a matter of law.
20        Plaintiff claims defendants were deliberately indifferent to exposure to unsafe
21 levels of carbon monoxide.
22        It is undisputed exposure to impermissible levels of carbon monoxide causes
23 acute symptoms reversible by moving the affected person to fresh air and does not cause long-
24 term health problems.  Defendants adduce evidence they were unaware plaintiff was exposed to
25 excessive levels of carbon monoxide, and plaintiff adduces no evidence to the contrary.
26        On these facts no reasonable jury could find in plaintiff's favor and so defendants

1  are entitled to judgment as a matter of law.

2           Plaintiff claims defendants were deliberately indifferent to his exposure to
3  intolerable noise levels.  Plaintiff asserts he did not know he could request earplugs until
4  December 7, 1999, and when he requested them a guard who is not a party to this action stated
5  there were none.

6           Prolonged exposure to excessive noise can violate the Eighth Amendment.  See
7  Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996).

8           It is undisputed earplugs were available to prisoners upon request and Brown
9  issued a memorandum to notify staff and prisoners of this fact.  Brown adduces evidence that the
10 supply never was exhausted.  All defendants adduce evidence they never knew plaintiff was
11 denied earplugs.  At deposition, plaintiff admitted that as a result of an administrative appeal,
12 December 7, 1999, he knew he could request earplugs but that he did not request them until
13 December 16, 1999, because he felt he should not be forced to wear earplugs when he could be
14 moved to a different building or to a different prison.  He also testified that when he requested
15 earplugs a guard told him there were none, but he concedes he did not notify defendants of this
16 fact and he did not ask anyone else for earplugs.

17          Taking this evidence in the light most favorable to plaintiff, despite Brown's
18 August 1999 memo, plaintiff did not know he could request earplugs until December 7, 1999,
19 when he notified defendants he did not know he could request them.  Nonetheless, plaintiff did
20 not request them for several days and when he was told there were none, he did not notify
21 defendants of this fact.

22          No reasonable jury could find defendants knew plaintiff wanted but could not
23 obtain earplugs and so there is no genuine dispute defendants were deliberately indifferent to
24 plaintiff's exposure to excessive levels of noise.  Accordingly, defendants are entitled to
25 judgment as a matter of law.

26          Plaintiff claims defendants were deliberately indifferent to the presence of vermin.

1   Vermin infestation can violate the Eighth Amendment.  Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985).

It is undisputed that staff set traps for pests and checked them weekly and defendant Brown dispatched pest control staff whenever he received notice vermin were a problem.  Building Unit 1 was cleaned daily and each prisoner had cleaning supplies and regular laundry service.  Plaintiff adduces no evidence to the contrary.

There is no evidence defendants knew of facts from which they could infer there was an infestation of vermin and drew the inference, but failed to take reasonable measures to bring it under control.

There is no genuine dispute concerning whether defendants were deliberately indifferent to the presence of vermin, and defendants are entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' July 22, 2005, motion for summary judgment should be granted and judgment should be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 27, 2006.

UNITED STATES MAGISTRATE JUDGE

\004
\boyc0176.f&r msj (3)